**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| REGINALD LEE ROGERS, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13CV738 |
| | ) | |
| FRANK L. PERRY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On August 17, 2007, in the Superior Court of Davidson County, a jury found Petitioner guilty of second-degree rape, second-degree sex offense, habitual misdemeanor assault, assault on a female, and breaking and entering, in cases 05 CRS 61448-49, 51 and 07 CRS 5067, and Petitioner received a sentence of 133 to 169 months of imprisonment. (Id., ¶¶ 1-6.)[1] Petitioner (through appointed counsel) appealed his convictions to the North Carolina Court of Appeals (id., ¶ 9) and that court unanimously denied his appeal, State v. Rogers, 194 N.C. App. 131, 669 S.E.2d 77 (2008). Petitioner then filed a petition for discretionary review ("PDR") with the North Carolina Supreme Court (Docket Entry 2, ¶ 9(g)), which that court denied on March 19, 2009 (id., ¶ 9(g)(3); Docket

[1] The record does not appear to contain a copy of the verdict forms and judgment for Petitioner.

Entry 11-3). Petitioner did not thereafter file a petition for certiorari in the United States Supreme Court. (Docket Entry 2, ¶ 9(h).)

After his direct appeal, Petitioner filed a slew of other motions in state court, beginning with a Motion for Appropriate Relief ("MAR") in the North Carolina Court of Appeals on May 18, 2009 (Docket Entry 11-4), which the court dismissed on May 28, 2009, without prejudice to allow filing in the Davidson County Superior Court (Docket Entry 11-6). On December 10, 2009, Petitioner filed a second MAR in the North Carolina Supreme Court, which the court dismissed without prejudice on March 11, 2010. (Docket Entry 11-7.) On June 21, 2010, Petitioner mailed a third MAR to the North Carolina Court of Appeals, which that court stamped and filed on June 24, 2010 (Docket Entry 11-8), and denied on July 12, 2010 (Docket Entry 11-10). Petitioner immediately thereafter - July 27, 2010 - filed a fourth MAR and a PDR with the North Carolina Court of Appeals (Docket Entries 12-1 - 12-4), which the court dismissed without prejudice on August 12, 2010 (Docket Entry 12-6).

Later, on April 3, 2013, Petitioner filed a fifth MAR in the Superior Court of Davidson County, and that court summarily denied his motion on April, 12, 2013. (Docket Entry 2, ¶ 11(a); Docket Entry 12-7.) Petitioner then filed a petition for writ of certiorari with the North Carolina Court of Appeals seeking review

of the denial of his fifth MAR on May 15, 2013. (Docket Entry 13-1.)[2] On June 6, 2013, the North Carolina Court of Appeals denied his petition. (Docket Entry 13-3.) On April 16, 2013, Petitioner petitioned the North Carolina Supreme Court for a writ of certiorari to review the Davidson County Superior Court decision, and that court denied the petition on June 12, 2013. (Docket Entry 13-4.) Also on April 29, 2013, Petitioner filed a Motion for Severance with the North Carolina Supreme Court that the court dismissed on June 12, 2013. (Docket Entry 2, ¶ 11(c); Docket Entry 13-6).[3]

Finally, Petitioner signed his Petition, under penalty of perjury, and dated it for mailing on August 27, 2013 (Docket Entry 2 at 15), and the Court stamped and filed it on August 30, 2013 (Docket Entry 1 at 1; Docket Entry 2 at 1).[4] Respondent has moved

---

[2] Petitioner admits to filing this MAR in his Petition, but uses different dates than contained in the supporting documents. (See Docket Entry 2, ¶ 11(b).) Given the nature of the analysis below, the differing dates do not affect the timeliness determination.

[3] Petitioner appended many different items to his Petition, not all clearly labeled. (See Docket Entry 2 at 16-33.) It appears that he included a subsequently made copy of this motion in his attachments to the Petition. (Id. at 18-20.) Petitioner's motion attempts to relitigate his objection to the joinder of his criminal trials and essentially functions as another MAR. (Id.)

[4] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on August 27, 2013, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 2 at 15.)

to dismiss the Petition on statute of limitation grounds. (Docket Entry 10.) Petitioner filed a response (Docket Entry 15), a supplement to his response (Docket Entry 16), and an affidavit (Docket Entry 17) regarding Respondent's instant Motion. For the reasons that follow, the Court should grant Respondent's instant Motion.

**Petitioner's Claims**

Petitioner raises four claims for relief in his Petition: (1) "Objection to joinder/motion for severance" (Docket Entry 2 at 5); (2) "Aggravating and mitigating factors" (id. at 7); (3) "Marriage challenge because racial discrimination and racial prejudice to Defendant's United States constitutional rights as a married citizen" (id. at 8); and (4) "Obstruction of justice and conflict of interests" (id. at 10).

**Discussion**

Respondent moves for dismissal of the Petition on the grounds that Petitioner filed his Petition outside of the one-year limitation period. See 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitations argument, the undersigned must first determine when Petitioner's one-year period to file his Section 2254 Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). Neither Petitioner nor Respondent claim that paragraphs (B) or (C) apply in this situation. Rather, Petitioner argues that he has newly discovered evidence, thereby requiring application of paragraph (D). (Docket Entry 2 at 14.) Alternatively, if paragraph (A) applies, then Petitioner argues that the Court should toll the one-year limitation period (Docket Entry 15 at 2), or that his actual innocence allows him to proceed despite the time bar (Docket Entry 2, ¶ 18). Petitioner's arguments lack merit.

As to when the statute of limitations began to run, paragraph (D) states that the one-year limitation begins when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28

U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); see also Johnson v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J. adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance."). Here, Petitioner's "new evidence" consists of trial transcripts wherein Petitioner objected to the joinder of his criminal trials. (Docket Entry 2 at 17.) Petitioner represented himself at trial and made the objection in issue himself; therefore, Petitioner knew the basis of his claim at that time, and the receipt of trial transcripts does not dictate when the statute of limitations began to run. See Sistrunk v. Rozum, 674 F.3d 181, 189 (3d Cir. 2012) (holding that "evidence that is previously known, but only newly available does not constitute newly discovered evidence" under paragraph (D) (citation and internal quotation marks omitted)); Johnson, 2008 WL 199728, at *3 ("Once a petitioner is alerted to factual circumstances that could form the basis for a habeas claim, the statute of limitations begins to run under § 2244(d)(1)(D), and accrual of the statute does not await the collection of evidence which supports the facts." (internal citation omitted)). Therefore, paragraph (D)

does not determine the start date of the statute of limitations and paragraph (A) applies.

Under paragraph (A), Petitioner's case became final on Wednesday, June 17, 2009 - 90 days after Petitioner failed to seek review in the United States Supreme Court of the Supreme Court of North Carolina's denial of his petition for discretionary review on March 19, 2009. See Sup. Ct. R. 13.1; Clay v. United States, 537 U.S. 522, 527 (2003). Petitioner's one-year limitation period then ran from June 17, 2009, until its expiration on June 17, 2010, without Petitioner's proper filing of any post-conviction petitions in state or federal court. Petitioner did not file the instant Petition until August 27, 2013, over three years past the deadline.

Although Petitioner filed two MARs during that one-year period, he should have filed them in the state trial court rather than in the North Carolina Court of Appeals or Supreme Court. See N.C. Gen. Stat. § 15A-1413. Accordingly, those post-conviction filings did not toll the statute of limitations. See Artuz v. Bennett, 531 U.S. 4, 8 (2000) (holding that petitioners must file petitions according to the applicable laws and rules to satisfy the "properly filed" requirement for tolling the one-year limitation period). Furthermore, Petitioner's filing of a MAR in the state trial court in April of 2013 did not revive the already-expired one-year limitation period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after the federal

limitations period do not restart or revive the federal limitations period).[5] Therefore, Petitioner filed his Petition untimely, outside of the one-year limitation period.

Despite the Petition's untimeliness, Petitioner argues that the Court should still consider his Petition. (Docket Entry 2, ¶ 18.) Petitioner first asserts that the Court should equitably toll the one-year limitation period. (Id.) Second, he contends that his actual innocence precludes application of the one-year limitation period. (Id.) The undersigned will address these arguments in turn.

Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations for habeas claims, see 28 U.S.C. § 2244(d)(1), a court can equitably toll the one-year limitation period, see Holland v. Florida, 560 U.S. 631, 634 (2010). Equitable tolling requires that Petitioner demonstrate that (1) he has diligently pursued his rights, and (2) extraordinary circumstances prevented a timely filing. Id. at 649. Equitable tolling requires a case by case analysis. Id. at 649-50.

In this case, Petitioner asserts several reasons why equitable tolling should apply: his trial counsel provided ineffective assistance (Docket Entry 15 at 2-3, 5), the United States Post Office lost legal documents addressed to the Wake Forest Innocence

[5] Petitioner's other state post-conviction filings (detailed above) also occurred after the one-year period expired and failed to qualify as "properly filed" for purposes of tolling.

and Justice Clinic (Docket Entry 15 at 3), and the North Carolina Actual Innocence Inquiry Commission delayed handling his case (id.). As to Petitioner's ineffective assistance of counsel claim, Petitioner alleges that his counsel called him "stupid" (Docket Entry 2, ¶ 18), and filed the PDR in Petitioner's direct appeal without his consent (Docket Entry 15 at 2, 5).

These circumstances do not rise to the level necessary to warrant equitable tolling. Even assuming Petitioner met the first prong of Holland, he has failed to allege extraordinary circumstances that prevented a timely filing. Regarding appointed counsel's alleged unauthorized filing of the PDR, far from preventing Petitioner from filing his Petition, counsel's action actually benefitted Petitioner. In order for a federal court to address a habeas corpus petition, Section 2254(b)(1) requires the petitioner to exhaust his state remedies. In North Carolina, a petitioner may satisfy that obligation either by directly appealing the conviction based on the issue(s) later raised in the federal habeas action - including pursuing a PDR with the North Carolina Supreme Court - or by filing a MAR that raises the issue(s) in question. See Lassiter v. Lewis, No. 5:11-HC-2082-D, 2012 WL 1965434, at *4 (E.D.N.C. May 31, 2012) (unpublished). In other words, by filing the PDR, Petitioner's counsel preserved the issues raised therein for federal habeas review, thereby protecting Petitioner from a procedural default. See Coleman v. Thompson, 501

U.S. 722, 731 (1991). Furthermore, the one-year limitation period did not begin until the North Carolina Supreme Court ruled on the PDR, so that time did not count against Petitioner. Finally, Petitioner's allegations of name calling, even if true, do not show how such actions prevented Petitioner from timely filing his Petition. Cf. Massey v. Brooks, No. 07-2654, 2007 WL 3231702, at *4 & n.8 (E.D. Pa. Oct. 29, 2007) (unpublished) (Robreno, J., adopting recommendation of Rice, M.J.) (refusing to equitably toll the statute of limitations when the petitioner alleged ineffective assistance of counsel because his counsel allegedly "lied to him, told him to shut up, and would not file his motion or address his claim" without any support in the record). Therefore, neither of Petitioner's allegations against appointed counsel provide a basis for equitable tolling.

Similarly, Petitioner's allegations regarding lost legal mail and delays by the Innocence Commission do not suffice. See Witherspoon v. White, No. 1:12-cv-352-RJC, 2013 WL 1798609, at *2 (W.D.N.C. April 29, 2013) (unpublished) (refusing to equitably toll the statute of limitations when the North Carolina Actual Innocence Inquiry Commission allegedly delayed in responding to the petitioner's request for help); Burns v. Beck, 349 F. Supp. 2d 971, 974 (M.D.N.C. 2004) (Beaty, J., adopting recommendation of Eliason, M.J.) (noting that misplacement of legal papers usually does not suffice as a ground for equitable tolling); cf. Dockery v. Beck,

No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (unpublished) (Beaty, J., adopting recommendation of Eliason, M.J.) (refusing to equitably toll the statute of limitations based on claims that Prisoner Legal Services delayed responding to the petitioner's request for help).

Moreover, the record belies any assertion that some extraordinary circumstance prevented Petitioner from timely filing his habeas motion considering the post-conviction filings he made in state court. During the one year limitation period, Petitioner managed to file two MARS in state court (as well as many other documents after the expiration of the limitation period). Petitioner has not explained why he remained able to file those documents despite his circumstances, but could not file a timely habeas petition under Section 2254.

As to Petitioner's claim of actual innocence, the United States Supreme Court has recognized that a showing of actual innocence may overcome the one year statute of limitations. McQuiggin v. Perkins, ___ U.S. ___, ___, 133 S. Ct. 1924, 1928 (2013). However, the Court also recognized that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id. In this case, Petitioner has not made a sufficient showing of actual innocence. Petitioner alleges that he faced "trumped-up" and "false charges" meant to damage his "life

and credibility with racism, deliberate falsity, and reckless disregard for his family life." (Docket Entry 2, ¶ 18.) However, Petitioner provides nothing beyond conclusory allegations of corruption and police misconduct to support his claim of actual innocence. (See Docket Entries 16, 17.) Thus, Petitioner has failed to demonstrate that no reasonable juror could find him guilty beyond a reasonable doubt, and his actual innocence claim does not prevent application of the one-year limitation period.

**IT IS THEREFORE RECOMMENDED** that the Court grant Respondent's Motion to Dismiss (Docket Entry 10), that the Court deny the Petition (Docket Entry 2), and that Judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 16, 2014